UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05CV-140-R

BORIS NICHOLAEVICH SKUDNOV                                               PLAINTIFF

v.

HOUSING AUTHORITY OF BOWLING GREEN                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #21). Plaintiff filed a response (Docket #25) to which Defendant replied (Docket #33). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

The Plaintiff, Boris Skudnov, applied for housing with the Housing Authority of Bowling Green (HABG) on December 18, 1991. On April 20, 1992, his application was approved, however, Skudnov declined to accept housing with HABG at that time. Skudnov ultimately entered a rental lease with HABG on August 25, 1993, and began renting an apartment located at 617D Gordon Avenue in Bowling Green. Skudnov renewed his lease on August 16, 1994.

In August of 1999, Skudnov applied for and was accepted into the Reach Higher Program, an education and employment training program sponsored by the HABG. Reach Higher is a six month program providing thirty-two hours of paid work experience per week with wages of $5.15 per hour in lieu of welfare benefits. Participants can continue to live in HABG public housing while in the program without incurring an increase in rent. When accepted into the program, Skudnov was

assigned to work in the HABG upholstery shop. However, Skudnov was unable to stand on his feet for long periods of time. Rather than require Skudnov to resign from the program, HABG assigned him tasks that allowed him to remain sitting. HABG claims that one of these tasks was the painting of a print for HABG to present in appreciation to the Mayor of Bowling Green. Skudnov states that this painting was to be provided to HABG for the sum of $170, not as part of the Reach Higher Program, and that he was never paid this amount. Skudnov remained in the Reach Higher program until December 1999 and was paid wages totaling $3332.18.

Skudnov clams that in 2001 he was asked to draw a mural on the walls of HABG's learning center. Skudnov states that he refused to take the job since he was not paid for his previous artistic work. Skudnov claims that HABG then began to retaliate against him.

After leaving the Reach Higher program, Skudnov continued to rent an apartment from HABG. In 2002, HABG began renovation work to the apartment complex where Skudnov lived. During the renovations, he and the other tenants were required to relocate. Skudnov refused to relocate and HABG initiated steps to evict him. On October 31, 2002, HABG filed a forcible detainer complaint in the Warren District Court. Prior to the hearing on the complaint, Skudnov agreed to move. HABG relocated Skudnov to another apartment it maintained in Bowling Green at 436A Graham Avenue.

Skudnov signed a new lease for the property on Graham Avenue when he relocated there. When Skudnov initially signed the lease, his income was such that a monthly rental fee was not charged. The rental agreement authorized a periodic income recertification of Skudnov. As of January 1, 2003, Skudnov's rent obligation was $142 per month. By October 1, 2003, his rent obligation had decreased to $89 per month based upon his income.

Under the terms of the rental agreement, Skudnov agreed to pay his rent obligation by the first day of each month and a $25 late fee if rent was not received by the tenth day of the month. The rental agreement also required Skudnov to maintain utilities in his name and to maintain a contract with a local utility service provider for such services during the terms of the tenancy.

As part of the 2002 relocation, HABG issued a check to Skudnov to pay for any fees associated with the transfer of utilities. Skudnov transferred the electric utility but did not transfer the gas. Because Skudnov did not transfer the gas, it remained connected in the name of HABG. HABG paid the bill each month and charged Skudnov's account for that amount. HABG provided Skudnov with notice of the charges to his account. Skudnov maintains that he specifically informed HABG that he did not want the gas turned on in his unit at the time of the move, as it was summer and would be an unnecessary expense.

In addition to the charges for the gas bill, Skudnov incurred three charges of $20 for grass cutting services provided by HABG on August 11, 2002; May 29, 2003; and July 17, 2003. HABG sent notice of the additional charges to Skudnov. Pursuant to the lease, Skudnov was required to perform seasonal maintenance unless HABG received proof of a disability. If a tenant failed to maintain their lawn, HABG would cut the grass and charge the tenant a fee for these services. Skudnov claims that this policy forced his high-school age son, Stan, who had recently turned eighteen, to mow the lawn despite Skudnov's protests that Stan was highly allergic to mown grass. As a result of his allergies, Stan had to visit the emergency room and received a doctor's order to remain home for three days. HABG states that when it received proof of Skudnov's disability, it began maintaining his yard free of charge.

Skudnov failed to pay rent for the months of September and October of 2003. He also failed

to pay late fees for the months of July, August, September, and October of 2003. Skudnov was provided with a statement each month regarding any overdue rent and expenses. On September 17, 2003, HABG gave Skudnov a thirty day notice of its intent to terminate the lease and warned that it would begin eviction proceedings by October 18, 2003. Skudnov was entitled to file a grievance after receiving this notice pursuant to the terms of his lease. Skudnov did not file a grievance.

Skudnov failed to bring the rent current and HABG filed a forcible detainer complaint on October 24, 2003.[1] Skudnov failed to appear for the hearing on this action and Judge Brent Potter of the Warren District Court entered a forcible detainer judgment on November 14, 2003.[2] Skudnov was given seven days to vacate the property.[3] Skudnov failed to vacate the premises and Judge Potter signed the eviction notice and warrant for possession on December 1, 2003.

On December 4, 2003, HABG notified Skudnov of the eviction notice and warrant for possession, informing him that he had until December 12, 2003, to remove his personal belongings from the property. On December 15, 2003, the Warren County Sheriff's Department executed the warrant for possession and removed all remaining items from Skudnov's apartment.

On September 19, 2005, Skudnov filed a complaint pro se with this court alleging that HABG "financially charged for things that were not clearly stated in the housing contract, the fines for law (sic) maintenance which resolted (sic) in my eviction from the residence. The action of the Housing authroritice (sic) towards me I consider as discrimination." After filing the complaint pro se, Skudnov retained counsel who entered an appearance on December 19, 2005.

---

[1] Skudnov claims that starting on September 10, 2003, he attempted to bring the rent and other charges current but that he was rebuffed by HABG.

[2] Skudnov states that he was in the hospital at the time of the hearing.

[3] Skudnov did not appeal this decision.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

**I.    AMERICANS WITH DISABILITIES ACT**

A person wishing to bring a lawsuit claiming a violation of the Americans with Disabilities Act (ADA) must file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discrimination, or if the plaintiff has instituted proceedings with a state or local agency, within 300 days. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1)). Once the EEOC dismisses the charge and issues a right-to-sue letter, the plaintiff has ninety days to file a civil action. *Peete v. Am. Standard Graphic*, 885 F.2d 331, 331 (6th Cir. 1989).

Skudnov never attempted to file a complaint with the EEOC and waited to initiate this action until December 2005, two years after the alleged discriminatory action. Failure to timely exhaust administrative remedies is an appropriate basis for the dismissal of an ADA action. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

To state a prima facie case under the ADA, Skudnov must show that the disability caused the adverse action. *See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032-33 (7th Cir. 1999). In his response to HABG's motion for summary judgment, Skudnov indicates that "following [his] refusal to provide free artistic services to [HABG], it retaliated against him by refusing to recognize his disabled status." Skudnov has failed to show that his disability caused the adverse action, rather he claims that it was his refusal to paint the mural which caused HABG to refuse to recognize his disabled status. Thus, Skudnov has failed to establish a prima facie case under the ADA.

Therefore, this Court finds that Skudnov failed to exhaust his administrative remedies and, thus, is precluded from bringing an action under the ADA. Additionally, this Court finds that even

if Skudnov was allowed to proceed on his claim, it would fail as a matter of law.

## II.     FAIR HOUSING ACT

When considering claims under the Fair Housing Act (FHA) the Court examines the issues under the three-part burden of proof shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If the plaintiff establishes the elements of his prima facie case, a mandatory presumption of unlawful discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the housing decision. *Id.*; *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000). If the defendant provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext that masks discrimination. *Selden v. United States Dep't of Hous. & Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986).

To state a prima face case of discrimination under the FHA, a plaintiff must show the following: (1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified to rent or purchase certain property or housing; (3) plaintiff was rejected; and (4) the housing or rental property remained available thereafter. *Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996).

Skudnov applied for housing with HABG on December 18, 1991, and was approved on April 20, 1992. Although he was later evicted from the property, there is no dispute that his application for housing was approved. HABG argues that this shows that Skudnov was never rejected for housing for which he applied and was qualified. However, in *Maki v. Laakko*, the Sixth Circuit suggested that an eviction notice would qualify as a rejection of plaintiff's application for housing. *Id.* at 363-65; *see also Farrell v. Cassano*, 34 Fed. Appx. 11, *14 (2d Cir. 2002) (Court applied

*McDonnell Douglas* test where plaintiff was evicted from property); *Smith v. Mission Assocs.*, 225 F. Supp. 2d 1293, 1301 (D. Kan. 2002) (Court applied *McDonnell Douglas* test where plaintiff was evicted from property); *Farrior v. H.J. Russell & Co.*, 45 F. Supp. 2d 1358, 1368 (N.D. Ga. 1999) (stating that plaintiff's rejection took the form of an eviction from the rental unit). Thus, Skudnov has established a prima facie case under the FHA.[4]

HABG has demonstrated a nondiscriminatory reason for Skudnov's eviction. *See McDonnell Douglas*, 411 U.S. at 802; *Mencer*, 228 F.3d at 634. Skudnov failed to pay rent for the months of September and October of 2003. He also failed to pay late fees for the months of July, August, September, and October of 2003.

To preclude summary judgment, Skudnov must show that HABG's proffered reason is a pretext that masks discrimination. *Selden.*, 785 F.2d at 160. Skudnov has asserted that "[h]e was evicted from his property for discriminatory reasons, and the property remained open." However, Skudnov has not provided any evidence demonstrating that a discriminatory purpose was a motivating factor in his rejection, a necessary element of the claim. *See Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996).

Therefore, this Court finds that Skudnov's claim under the FHA fails as a matter of law.

## III.   KENTUCKY CIVIL RIGHTS ACT

KRS 344.120 provides that: "[I]t is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in KRS

---

[4] HABG does not dispute that Skudnov was a member of two protected classes, national origin and disabled persons. Nor does HABG dispute that the property remained open following Skudnov's eviction.

344.130, on the ground of disability, race, color, religion, or national origin." KRS 344.360 provides:

> It is an unlawful housing practice for a real estate operator, or for a real estate broker, real estate salesman, or any person employed by or acting on behalf of any of these:
>
> (1) To refuse to sell, exchange, rent, or lease, or otherwise deny to or withhold, real property from any person because of race, color, religion, familial status, disability, or national origin;
>
> (2) To discriminate against any person because of race, color, religion, sex, familial status, disability, or national origin in the terms, conditions, or privileges of the sale, exchange, rental, or lease of real property or in the furnishing of facilities or services in connection therewith;
>
> (4) To refuse to negotiate for the sale, rental, or lease of real property to any person because of race, color, religion, sex, familial status, disability or national origin;
>
> (8) To otherwise deny to or withhold real property from any person because of his race, color, religion, sex, familial status, disability, or national origin;
>
> (9) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a housing accommodation to any buyer or renter because of a disability of:
>
>> (a) That buyer or renter
>>
>> (b) A person residing in or intending to reside in that housing accommodation after it is so sold, rented, or made available; or
>>
>> (c) Any person associated with that buyer or renter
>
> (11) For purposes of this section, discrimination includes:
>
>> (b) A refusal to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a housing accommodation

Skudnov claims that HABG discriminated against him based on his disability and his national origin when it denied him the rental of real property in violation of KRS 344.120 and KRS 344.360(1), (2), (4), (8), and (9). HABG asserts that Skudnov has failed to show that a

discriminatory purpose was the motivating or substantial factor in HABG's actions.

Skudnov has failed to state a cause of action under KRS 344.120 or KRS 344.360(1), (4), or (8), as he has not demonstrated that HABG refused to withhold real property from him *on the ground of* or *because of* his disability or national origin. Skudnov claims that HABG had a systematic plan to remove him from the real property that he rented from it due to his refusal to paint a mural for HABG not because of his disability or national origin.

Skudnov has also failed to state a cause of action under KRS 344.360(2) or (9). KRS 344.360(11)(b) requires a real estate operator to make reasonable accommodations when necessary to ensure a person equal opportunity to use and enjoy a housing accommodation. Under the terms of the lease, Skudnov was required to perform seasonal maintenance unless HABG received proof of a disability. When HABG received proof of Skudnov's disability it began maintaining his yard free of charge. The Court finds that this was a reasonable accommodation under 344.360(11)(b).

Therefore, this Court finds that Skudnov's claim under the Kentucky Civil Rights Act fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.